```
 1                  IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2                              AT CHARLESTON


 3
    _____x
 4                                :
    UNITED STATES OF AMERICA,      :   CRIMINAL ACTION
 5                                :
               Plaintiff,          :   NO. 2:17-cr-00083-02
 6                                :
                  -vs-             :
 7                                :
    DAVID WAYNE YOUNG,             :
 8                                :
                  Defendant.  :
 9  _____x
```

**SENTENCING HEARING**
**BEFORE THE HONORABLE JOHN T. COPENHAVER, JR.,**
**SENIOR UNITED STATES DISTRICT JUDGE**
**JANUARY 31, 2019**

```
13
    APPEARANCES:
14  FOR THE PLAINTIFF:          AUSA JENNIFER RADA HERRALD
                                Assistant United States Attorney
15                              U.S. Attorney's Office
                                P.O. Box 1713
16                              Charleston, WV  25326-1713

17


18
    FOR THE DEFENDANT:          TIMOTHY J. LAFON, ESQUIRE
19                              Ciccarello Delgiudice & Lafon
                                Suite 100
20                              1219 Virginia Street, East
                                Charleston, WV 25301-2912
21


22       Proceedings recorded by mechanical stenography,
    transcript produced by computer.
23       _____
             CATHERINE SCHUTTE-STANT, RDR, CRR,
24              Federal Official Court Reporter
              300 Virginia Street, East, Room 6009
25                  Charleston, WV 25301
```

1                                    INDEX

2

3      **WITNESS:**
       **DEFENDANT DAVID YOUNG**

4                                                            PAGE

       EXAMINATION BY MR. LAFON . . . . . . . . . .   6

5

6

7      GOVERNMENT'S
       EXHIBITS                 ADMITTED

8

9      (None)

10

11     DEFENDANT'S
       EXHIBITS                 ADMITTED

12
       (None)
13

14

15

16

17

18

19

20

21

22

23

24

25

USA v YOUNG

```
 1                    P-R-O-C-E-E-D-I-N-G-S              1:30 p.m.

 2              THE CLERK:  All rise.

 3              THE COURT:  Good afternoon.  Please be seated.

 4              THE CLERK:  The case before the Court is the
```
 5   *United States of America versus David Wayne Young*, Criminal

 6   Action Number 2:17-00083-02.

 7        Would counsel note their appearance for the record,

 8   please.

 9              MS. HERRALD:  Jennifer Herrald for the United

10   States.

11              THE COURT:  Thank you.

12              MR. LAFON:  Tim LaFon for the defendant.  The

13   defendant is here also, Your Honor.

14              THE COURT:  Thank you.

15              THE CLERK:  Will the defendant please stand and

16   raise your right hand to be sworn.

17              **DAVID WAYNE YOUNG, DEFENDANT, SWORN**

18              THE COURT:  This matter for some time has been

19   scheduled for this date for sentencing.  The Court received

20   this morning in the mail a letter from the defendant

21   relating to his representation by Mr. Lafon.

22        The Court has sent a copy of that letter by e-mail to

23   counsel, both for the government and the defendant.

24        And I take it that it has been received and read by

25   counsel?  Is that correct?

```
 1              MS. HERRALD:  Yes, Your Honor.

 2              MR. LAFON:  Yes, Your Honor.

 3              THE COURT:  And that being the case, Mr. Lafon, I

 4    wonder whether you've had any opportunity yet to speak to

 5    Mr. Young about the matters in that letter?  I realize that

 6    you were delayed in getting here today because you were in

 7    Roane County in a proceeding and encountered an accident

 8    that blocked the traffic and you had to reverse your course

 9    and that's the reason we are getting started a little late.

10    So you may not have had time to speak to him about this at

11    all, but I would ask you whether you have consulted at all

12    since you arrived here about the contents of the letter?

13              MR. LAFON:  I have, Your Honor.  I got my copy of

14    it a couple hours ago.  And I appreciate the Court's

15    accomodation.  I drove a hundred miles to get 20.  And I

16    talked to my client again since I got that letter.  Although

17    I went to see him a couple days ago.  And then I talked to

18    him today--

19              THE COURT:  When is the last time you saw him?

20              MR. LAFON:  I saw him two days ago in person.  And

21    he didn't mention anything like that, the contents of the

22    letter.

23              THE COURT:  Today, of course, is Thursday.  You're

24    saying you saw him Tuesday?

25              MR. LAFON:  Yes, Your Honor.
```

1          THE COURT:  This letter is dated Sunday, January

2    27th; although, not received until this morning.

3          MR. LAFON:  There was no mention of it to me in my

4    meeting.  But I have talked to him since I've been here,

5    Your Honor, and now he says he wishes to recant that letter

6    and does not want me dismissed.  But, of course, Your Honor,

7    if we are going to proceed here today, I want to make

8    inquiry of my client about a few things, if we are going to

9    proceed, to make sure that that doesn't boomerang again in

10   the future.  Because, obviously, those allegations are

11   pretty serious towards me.  And if he wants to recant

12   those -- he advises that he had some people in his head, for

13   whatever that might mean.  But if we are going to proceed

14   here, I want to make inquiry of him before we do that.

15         THE COURT:  Thank you.

16      Let me ask you, Mr. Young, I understand from what

17   Mr. Lafon says, that you do wish to withdraw the letter, and

18   that you do wish to proceed with him as your attorney.

19      Is that a correct understanding?

20         THE DEFENDANT:  That is correct, sir.

21         THE COURT:  And so if that is the case, what

22   period of time do you need, Mr. Lafon, to go over matters

23   with your client?

24         MR. LAFON:  Well, Your Honor, what I would like to

25   do, if the Court will permit it, is let me go through a

1    series of questions here to get on the record that he

2    doesn't have any problem with me.

3              THE COURT:  I'm pleased for you to do that.

4              MR. LAFON:  And if he answers that in such a

5    fashion that the Court is pleased with the fact that he does

6    not want to withdraw me as counsel, then we can proceed

7    today, as far as I'm concerned.

8              THE COURT:  Well, if the questions, of course,

9    pertain to the matter of your withdrawal, the Court welcomes

10   your proceeding with that.

11        Of course, the Court's not interested in -- and I am

12   sure you'll be cautious about it -- of disclosure of any

13   attorney/client matter.

14             MR. LAFON:  Of course not, Your Honor.  I'm just

15   simply going to inquire about my diligence and his position

16   on that.

17             THE COURT:  You may go ahead.

18        **DAVID WAYNE YOUNG, DEFENDANT, PREVIOUSLY SWORN**

19                         **EXAMINATION**

20   **BY MR. LAFON:**

21   **Q.**   Mr. Young, do you recall when I visited you in Kentucky

22   to go over the evidence in this matter?

23   **A.**   Yes, sir.

24   **Q.**   And did I not go over that evidence in detail with you?

25   **A.**   Yes, sir.

YOUNG - EXAMINATION BY LAFON

1   **Q.**   Do you recall when we got together to prepare for a

2   suppression hearing on certain issues in this case and

3   certain phone calls?

4   **A.**   Yes, sir.

5   **Q.**   And do you recall us having quite a lengthy hearing in

6   the courtroom about the suppression hearing?

7   **A.**   Yes, sir.

8   **Q.**   And do you believe that I represented you properly in

9   that suppression hearing?

10  **A.**   Yes, sir.

11  **Q.**   And that I adequately prepared with you before we went

12  forward?

13  **A.**   Yes, sir.

14  **Q.**   Now, of course, you know the Court ruled against us in

15  that suppression hearing?

16  **A.**   Correct.

17  **Q.**   Do you recall me coming two times to Kentucky to

18  present you with -- present to you plea agreements?

19  **A.**   Yes, sir.

20  **Q.**   And do you recall me going over the terms of those plea

21  agreements, and that in representing to you that those were

22  the only plea agreements that were going to be offered in

23  this case?

24  **A.**   Yes, sir.

25  **Q.**   And did you understand that there was a 15-year

YOUNG - EXAMINATION BY LAFON

1  mandatory minimum in those plea agreements?

2  **A.**   Yes, sir.

3  **Q.**   Do you recall the Court going over with you in length

4  the terms of those plea agreements before the Court accepted

5  the same?

6  **A.**   Yes, sir.

7  **Q.**   Did you understand them at that time?

8  **A.**   Yes, sir.

9  **Q.**   And the plea was adequately explained to you?

10  **A.**   Correct.

11  **Q.**   And do you now understand here today, and have you

12  understood since Sunday, that that plea agreement carries

13  with it a 15-year mandatory minimum?

14  **A.**   I do, sir.

15  **Q.**   Okay.  Now, do you also recall that I made attempts and

16  was successful in getting the Court to allow us to have a

17  psychiatric evaluation done on you?

18  **A.**   Yes, sir.

19  **Q.**   Sexual offender evaluation done on you?

20  **A.**   Yes, sir.

21  **Q.**   And we did that in attempts to try to aid the Court in

22  sentencing?

23  **A.**   Correct.

24  **Q.**   And we got that accomplished?

25  **A.**   Correct.

YOUNG - EXAMINATION BY LAFON

1    **Q.**   And do you recall that we went forward with that, and

2    there was a lengthy gap in time before your sentencing

3    because my office took care of getting that done.

4         Do you recall that?

5    **A.**   Yes, sir.

6    **Q.**   And do you understand that in the presentence

7    investigation, what has been recanted in the way of facts is

8    simply the transcripts from the very phone calls that we

9    attempted to keep out in the suppression hearing?

10        Do you understand that?

11   **A.**   Yes, sir.

12   **Q.**   And I discussed with you that there were no objections

13   to those to be had as to the PSI?

14   **A.**   Yes, sir.

15   **Q.**   And is there anything -- and you need to say, if this

16   is what you believe, because we don't want you to go forward

17   unless you believe this.

18   **A.**   Correct.

19   **Q.**   If there is anything that I should have done that I

20   didn't do?

21   **A.**   No, sir.

22   **Q.**   Okay.  Are you satisfied with my services as an

23   attorney?

24   **A.**   Yes, sir.

25   **Q.**   Do you believe you are getting a fair and just

1   representation of you in this case?

2   **A.**   Yes, sir.

3   **Q.**   And if you don't think that, the Court will consider

4   getting you a new attorney.  Right?

5   **A.**   Yes -- (inaudible).

6           COURT REPORTER:  I'm sorry.  Excuse me.  Repeat

7   your answer, please.

8           THE COURT:  What was the last answer?

9           MR. LAFON:  He said "yes" he understood that and

10  he wants to go forward.

11          THE COURT:  What was your statement?

12          THE DEFENDANT:  Yes, I understand, and I'm ready

13  to proceed with Mr. Lafon as my attorney.

14          THE COURT:  Thank you.

15  BY MR. LAFON:

16  **Q.**   And you're completely satisfied with my services?

17  **A.**   Yes, sir.

18  **Q.**   Now, this Court is going to render a sentence here in a

19  little while.

20  **A.**   Yes.

21  **Q.**   I don't know what this Court is going to do, but if

22  you're unsatisfied with that, are your answers going to be

23  any different to these questions?

24  **A.**   No, sir.

25  **Q.**   Okay.  And I have since went over with you all my

1    presentence memorandum, correct?

2    **A.**    Correct.

3    **Q.**    And as a matter of fact, you were a little upset

4    because I made some negative comments in there about you,

5    but we have discussed that?

6    **A.**    Yes, we have.

7    **Q.**    And you understand the import of what was in there?

8    **A.**    Yes, sir.

9    **Q.**    And you approve of that?

10   **A.**    Yes, sir.

11   **Q.**    Okay.  And so you want to go forward today?

12   **A.**    I do want us to proceed forward today.

13          MR. LAFON:  Nothing further, Your Honor.

14          THE COURT:  Thank you.

15       Let me ask, Mr. Lafon, whether or not you do wish any

16   further time before proceeding at this sentencing hearing?

17          MR. LAFON:  No, Your Honor.

18          THE COURT:  Very good.

19       Does the government have any comment on any of this?

20          MS. HERRALD:  No, Your Honor.

21          THE COURT:  Thank you.

22       The Court understands the defendant has withdrawn his

23   letter received this morning under date of January 27, 2019,

24   in which a request can be said to be made for another

25   attorney in the case, and that the defendant has satisfied

```
 1    the Court that he, rather, wishes to have Mr. Lafon remain
 2    as his counsel.
 3         And we'll proceed to sentencing accordingly.
 4         Mr. Lafon, have you been over the Probation
 5    Department's Presentence Report in this case with Mr. Young?
 6              MR. LAFON:  Yes, Your Honor.
 7              THE COURT:  Have you gone over it with him
 8    thoroughly?
 9              MR. LAFON:  Yes, Your Honor.
10              THE COURT:  Can you tell me whether or not he
11    understands it?
12              MR. LAFON:  I believe he does, yes.
13              THE COURT:  Thank you.
14         And, Mr. Young, have you read the entirety of the
15    Probation Department's Presentence Report in your case?
16              THE DEFENDANT:  Yes, Your Honor.
17              THE COURT:  Have you gone over it thoroughly with
18    your attorney, Mr. Lafon?
19              THE DEFENDANT:  Yes, sir.
20              THE COURT:  Has he explained to you everything you
21    didn't understand about it after you first read it?
22              THE DEFENDANT:  Yes, sir, Your Honor.
23              THE COURT:  Do you understand everything in that
24    report?
25              THE DEFENDANT:  Yes, Your Honor.
```

USA v YOUNG

```
1              THE COURT:  Is there anything about it that you
2    don't understand?
3              THE DEFENDANT:  No, Your Honor.
4              THE COURT:  Thank you.
5         Mr. Lafon, are there any objections to the report?
6              MR. LAFON:  None, Your Honor.
7              THE COURT:  And are there any objections, Mr.
8    Young?
9              THE DEFENDANT:  No, Your Honor.
10             THE COURT:  Does the government have any
11   objections to the report?
12             MS. HERRALD:  No, Your Honor.
13             THE COURT:  Mr. Lafon, so far as you are aware, is
14   everything in this report factually correct?
15             MR. LAFON:  As far as I understand, Your Honor.
16   There is -- there is recitations of transcripts from phone
17   calls, and that is what was turned over to me in discovery.
18   So, yes, I don't know have any problems with it, the
19   factual accuracy.
20             THE COURT:  And, Mr. Young, is everything in this
21   report factually correct?
22             THE DEFENDANT:  Yes, Your Honor.
23             THE COURT:  Thank you.
24        Are the parties in agreement that under the advisory
25   United States Sentencing Guidelines, the Total Offense Level
```

1    is that of 43, with a Criminal History Category of I, and

2    that yields an advisory guideline range for imprisonment

3    purposes of life imprisonment, with, in any event, a

4    mandatory 15-year minimum sentence by statute?

5              MS. HERRALD:  Yes, Your Honor.

6              MR. LAFON:  Yes, Your Honor.

7              THE COURT:  Do you understand that, as well, Mr.

8    Young?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Thank you.

11        And the parties also understand the term of supervised

12   release in this case is at least five years, and it may be

13   as long as life?

14             MS. HERRALD:  Yes, Your Honor.

15             MR. LAFON:  Yes, Your Honor.

16             THE COURT:  And you understand that also, Mr.

17   Young?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Has the $100 Special Assessment been

20   paid?

21             MR. LAFON:  As far as I know, it has not been

22   paid, Your Honor.

23             THE COURT:  And is there any question to be raised

24   by the government about the indigency of the defendant, who,

25   if deemed indigent, is not responsible for the $5,000

1   assessment?  What's the position of the government on that

2   matter?

3          MS. HERRALD:  The government, Your Honor, has no

4   argument at this time that the defendant is not indigent for

5   purposes of that provision.

6          THE COURT:  Thank you.

7      Do the parties have anything further on any of those

8   matters?

9          MR. LAFON:  Nothing by the defendant, Your Honor.

10          MS. HERRALD:  No, Your Honor.

11          THE COURT:  And let me ask whether the government

12   has had occasion to give notice to any victims in this case?

13          MS. HERRALD:  Yes, Your Honor.  The victims have

14   been notified about today's proceeding.

15          THE COURT:  And when you say the victims have been

16   notified, are you speaking of those who are frequently

17   referred to in this case and these papers as Victims 1 and

18   2?

19          MS. HERRALD:  Well, Victims 1 and 2 are minors.

20   Their guardians have been notified of the hearing.

21          THE COURT:  And so when you say guardian, are you

22   referring to a parent, or someone else?

23          MS. HERRALD:  I believe in the case of minor

24   Victim Number 1, that -- I believe that she at least

25   previously was in DHHR.  DHHR was the guardian.  And as far

USA v YOUNG

1    as I know, that is still the case.  And the DHHR

2    representative was provided with notice.

3              THE COURT:  And so the guardian is an individual?

4              MS. HERRALD:  A specific individual with DHHR?

5              THE COURT:  Yes.

6              MS. HERRALD:  I believe so, yes, Your Honor.

7              THE COURT:  And I'm still not -- I'm unclear.  Is

8    there an individual who is affiliated with DHHR who is named

9    as the guardian, or is DHHR named as the guardian?

10             MS. HERRALD:  There is an individual at DHHR who

11   is assigned as the guardian to receive such notice.

12             THE COURT:  And that person has been notified?

13             MS. HERRALD:  Yes, Your Honor.

14             THE COURT:  And is that person present?

15             MS. HERRALD:  No, Your Honor.

16             THE COURT:  Did that person -- well, I'll ask that

17   in a moment.

18        With respect to Victim 2, was the mother of that child

19   notified?

20             MS. HERRALD:  Yes, Your Honor.

21             THE COURT:  And were both the guardian on the one

22   hand, and the mother on the other, of Victims 1 and 2, both

23   informed that, one, they could make a claim in this case for

24   damages on behalf of the victim, and that restitution would

25   be imposed if that were filed; and two, that they could

1   attend this hearing and speak to the Court with respect to

2   any aspect of this matter that they may have wished?

3             MS. HERRALD:  Yes, Your Honor.

4             THE COURT:  And is it the case that no one has

5   elected to file a claim, and that no one is present to be

6   heard today?

7             MS. HERRALD:  That is correct, Your Honor.

8             THE COURT:  Thank you.

9        Kelley, let me see you a minute.

10       (Pause.)

11            THE COURT:  In connection with supervised release,

12  there are a number of conditions which the Court intends to

13  impose that I want to go over with you specifically now, and

14  those have to do with the standard and optional conditions

15  of supervised release that apply in sex offense cases in

16  this district generally.

17       The Court, I believe, has received no objection to any

18  of the standard provisions, except one that, I think, if I

19  recall correctly -- and I'm drawing on memory now -- it may

20  have been that a question was raised about the defendant

21  being in possession of pictures of his grandchildren.

22       Do you recall, Mr. Lafon, whether that question was

23  raised?

24            MR. LAFON:  No, Your Honor.

25            THE COURT:  Ms. Herrald, do you recall it being

USA v YOUNG

1    raised anywhere?

2              MS. HERRALD:  I do not, Your Honor.

3              THE COURT:  While we are on the topic, let me ask

4    the defendant whether at this juncture he has any

5    grandchildren?

6              THE DEFENDANT:  No, Your Honor, I do not.

7              THE COURT:  Now, your daughter is about 15?

8              THE DEFENDANT:  She's 17, sir.

9              THE COURT:  17.  And how old is your son?

10             THE DEFENDANT:  21.

11             THE COURT:  Thank you.

12        The Court in the past couple of years has made a couple

13   of revisions to the standard provisions, which add

14   qualifications that, by and large, modify the impact of some

15   of these conditions, and I'll go over them with you in a

16   moment.

17        But, do I understand, first of all, that there are no

18   objections to the imposition of all of the standard and

19   optional sex offender conditions?

20        Am I correct in that?

21             MR. LAFON:  Correct, by the defendant, Your Honor.

22             THE COURT:  And is that correct, Mr. Young?

23             THE DEFENDANT:  That is correct, Your Honor.

24             THE COURT:  With respect to those revisions, the

25   Court would make the following qualifications or

 1    provisions -- and after I make all of them, I'll hear you

 2    about whether or not you -- and it will be, more likely, the

 3    government has any objection to any of them.

 4         Standard 4, where the probation officer is to be

 5    notified within 10 days prior to a change of residence or

 6    employment, there is added this sentence, "If notifying the

 7    probation officer in advance is not possible due to

 8    unanticipated circumstances, you must notify the probation

 9    officer within 72 hours of becoming aware of a change or

10    expected change."

11         Standard 5, which prescribes that the defendant shall

12    not access or possess any material depicting sexually

13    explicit conduct is modified at that point by the qualified

14    language, "involving a minor under the age of 18 years as

15    defined in Title 18, United States Code, Section

16    2256(2)(A)."

17         And it's also noted that in that same provision, it's

18    prescribed that as follows:  "nor shall the defendant

19    knowingly enter, or knowingly remain in, any location,

20    without the prior approval of the probation officer," and

21    then the addition, "which approval or permission shall not

22    be unreasonably withheld."

23         And then continuing with the original language, "where

24    such materials can be accessed, obtained, or viewed," et

25    cetera.

USA v YOUNG

1          And the materials referred to are that which depict

2     sexually explicit conduct.

3          Paragraph 6 precludes the defendant from, for example,

4     purchasing, possessing, procuring or otherwise obtaining any

5     computer or electronic device that can be linked to any

6     computer networks, et cetera, unless approved by the

7     probation officer.

8          And the language has been added, "which approval shall

9     not be unreasonably withheld."

10          Rather than wait to the end of all of this, I'll simply

11     ask whether or not those revisions in what amount to the

12     first eight standard conditions for sex offenders are

13     objected to?

14               MS. HERRALD:  No, Your Honor.

15               MR. LAFON:  No objection by the defendant.

16               THE COURT:  The next one has to do with Number 9,

17     where it's noted that the defendant shall not purchase,

18     possess, or consume alcohol, and the defendant shall not

19     frequent any businesses whose primary function is to serve

20     alcohol beverages.

21          The Court has in the past added, at that point, "The

22     defendant shall refrain from the excessive use of alcohol."

23          So that that provision is modified in many instances.

24     In the defendant's case, the Presentence Report indicates a

25     rather significant consumption of alcohol by him, and I'm

USA v YOUNG

1    inclined not to add that qualification as the Court has done

2    in a number of other cases, where it says, "The defendant

3    shall refrain from the excessive use of alcohol;" rather

4    than simply leaving as it is originally, that is, "The

5    defendant shall not use alcohol."

6          And the Court is simply expressing its concern that

7    alcohol may be a triggering factor in his situation that

8    compels him to engage in the kind of conduct that has him

9    before the Court.

10         I'd be happy to hear the parties or the Court.

11              MS. HERRALD:  The United States agrees with the

12   Court's assessment and would agree that the provision should

13   remain as currently written.

14              MR. LAFON:  The defendant doesn't object, Your

15   Honor.

16              THE COURT:  All right.  And so the Court will not

17   add that modification to 9, as it often does.

18         With respect to the optional conditions, most of that

19   change really has to do with adding, with respect to

20   approval or the prior approval of the probation officer,

21   "which approval shall not be unreasonably withheld."

22         That term, "which approval shall not be unreasonably

23   withheld," is added to the matter of written approval from

24   the probation officer in Optional Conditions 2, 3, 4 -- I

25   note twice in 4, and 7, 9, and 10.

USA v YOUNG

1          Any objection to the Court doing so here in those

2     instances?

3               MS. HERRALD:  No, Your Honor.

4               MR. LAFON:  None by the defendant, Your Honor.

5               THE COURT:  Now then, in addition to that, the

6     Court proposes to modify Optional Condition 2 in another

7     respect.  And I hope the parties have the provision before

8     you, because it's difficult to understand unless you do.

9          Do you have Optional Condition 2 before you?

10              MS. HERRALD:  Yes, Your Honor.

11              MR. LAFON:  I do not, Your Honor.

12         (Pause.)

13              MR. LAFON:  I've got it, Your Honor.

14              THE COURT:  What the Court proposes to do with it

15    is to revise it so that instead of having 1, 2, and 3, the

16    Court has what turns out to be 1 or 2.

17         And as a consequence, it would read as follows:

18         "The defendant shall not associate or have verbal,

19    written, telephonic or electronic communications with any

20    minor except:  1) in the presence of the parent or legal

21    guardian of said minor and on the condition that the

22    defendant notifies the parent or legal guardian of the

23    defendant's sex offender conviction(s); or, 2, with written

24    approval from the probation officer, which approval shall

25    not be unreasonably withheld."

USA v YOUNG

1        Is that revision satisfactory to the parties?

2            MS. HERRALD:  The United States would object to

3    that provision in this specific case, Your Honor.

4    Specifically, in the case, the defendant has already shown a

5    predisposition to reach out to individual parents who are

6    okay with him sexually abusing their own children.

7        Because of that, the United States believes that any

8    contact with minors should go beyond simply conferring with

9    the parent, but also involve the approval of the probation

10   officer.

11           THE COURT:  Thank you.

12       Any comment on that, Mr. LaFon?

13           MR. LAFON:  Obviously, we don't object to the

14   revision, Your Honor.

15           THE COURT:  Let me look at it again in light of

16   the government's objection.

17       (Pause.)

18           THE COURT:  The provision is revised, except only

19   the following, "The defendant shall not associate or have

20   verbal, written, telephonic or electronic communications

21   with any minor except" -- that exception being that it can

22   be done in the presence of the parent or legal guardian of

23   said minor, and on the condition that the defendant notifies

24   the parent or legal guardian of the defendant's sex offender

25   conviction.

USA v YOUNG

```
1          Isn't that enough to protect against the prospect that

2     the defendant would engage in such conduct?

3               MS. HERRALD:  Well, Your Honor, it wasn't

4     sufficient with Ms. Baisden.

5               THE COURT:  How is that?

6               MS. HERRALD:  It was not sufficient with his

7     codefendant.  She was willing to be present and was aware of

8     his, at least, sexual interest.  There wasn't a sexual

9     conviction at that point, but he was -- she was a parent who

10    was well aware that the defendant wanted to have sex with

11    her daughter in her presence, and she was fine with that,

12    Your Honor.

13         So the fact that the defendant has sought out such an

14    individual before, I simply do not believe that he can be

15    trusted to seek out parents who are not going to jeopardize

16    their children.

17              THE COURT:  Anything further on that, Mr. Lafon?

18              MR. LAFON:  I mean, obviously, Ms. Baisden didn't

19    know -- he wasn't a sexual offender at the time, so this is

20    not even applicable in her situation.

21              THE COURT:  The government's point seems to be

22    well taken in light of the realities of this case.  The

23    government's pointed out that the defendant, in effect,

24    complied with this in speaking to the mother of Victim 1,

25    and although at that time he had no sex offender conviction,
```

USA v YOUNG

1    he does now.  And I believe the government is correct that

2    the provision should be revised so that it could read as

3    follows, with the exception being, "in the presence of the

4    parent or legal guardian of said minor and on the condition

5    the defendant notifies the parent or legal guardian of the

6    defendant's sex offender conviction."  "And," rather than

7    "or."

8         "And with written approval from the probation officer."

9         So the Court will leave that in that posture, and of

10   all of that with respect to the probation officer's approval

11   is subject to the qualifications that I've already noted,

12   "which approval shall not be unreasonably withheld."

13        So I believe that covers it.

14        Do the parties have anything further on that?

15            MS. HERRALD:  No, Your Honor.

16            MR. LAFON:  Note my objection, Your Honor.

17            THE COURT:  I think that covers it.

18        And so, do the parties have anything further on the

19   conditions of supervised release?  The Court noting, in

20   addition to these, of course, the Court will be imposing the

21   usual conditions of supervised release that apply in every

22   case, as a practical matter, being those by order of this

23   Court and those suggested by the Administrative Office of

24   the United States Courts and its submission in prior years

25   to the Court.

USA v YOUNG

```
1          Do the parties have anything further on any of that?
2               MS. HERRALD:  No, Your Honor.
3               MR. LAFON:  Nothing by the defendant.
4               THE COURT:  With that, let me ask you whether you
5    have anything further before coming to the bench for
6    sentencing?
7               MS. HERRALD:  No, Your Honor.
8               MR. LAFON:  Nothing, Your Honor.
9               THE COURT:  Let me ask you to come forward,
10   please.
11        Mr. Lafon, do you see any reason why sentence should
12   not now be imposed?
13              MR. LAFON:  No, Your Honor.
14              THE COURT:  And, Mr. Young, do you see any reason
15   why sentence should now be imposed?
16              THE DEFENDANT:  No, Your Honor.
17              THE COURT:  And, Mr. Lafon, do you have anything
18   you'd wish to say in Mr. Young's behalf?
19              MR. LAFON:  I do, Your Honor.  As always, this
20   Court -- I know this Court is well aware of the facts and
21   circumstances of this case.  But, in my opinion, this is a
22   case where the unfairness of the sentencing guidelines in
23   certain situations is apparent.  And this case cries out
24   for -- on two areas; one, prosecutorial discretion, and
25   sentencing disparity.
```

USA v YOUNG

1          My client and his codefendant engaged in identical

2      conduct, but my client was never offered the same plea

3      agreement.  My client -- I believe because he wanted to go

4      forward with a suppression hearing and that kind of thing,

5      but he was never offered the same plea agreement.

6          He has no criminal history.  And other than some minor

7      traffic situations, he has no criminal history.

8          The prosecutor wants to make much of what happened in

9      Kentucky.  That's not part of this case and has never been

10     proven up, other than the Court found by a much lower

11     standard that statements discovered during an investigation

12     in Kentucky should come in in this case.

13         The activities that constituted the crime in this case

14     are identical to his codefendant.

15         They talked at a chat room; said some things that were

16     horrible, deplorable.  We'll never know whether they were

17     going to actually carry through with them.  But,

18     unfortunately, the law in these charges doesn't require a

19     proof that they were going to actually go forward with those

20     types of acts, but simply the solicitation constitutes the

21     crime.

22         The codefendant received a plea where it was in the

23     Court's discretion, and it was not a mandatory minimum, so

24     that she received a 72-month sentence.  It would be woefully

25     unfair and contrary to Section 3553, and it would be a huge

1    sentence disparity if he were to get a sentence dramatically

2    more than the mandatory minimum.  That's what 3553 attempts

3    to avoid, is that type of sentence disparity.

4         I know the government is going to mention what he may

5    or may have been going to do in a Kentucky case.  That's

6    certainly not relevant conduct.  The time frame is not even

7    clear whether it was before or after these charges.  And

8    that's not relevant conduct; it shouldn't be brought into

9    this.

10        And then some more things that he said on these chat

11   rooms, they are trying to hold against him, that we don't

12   know if that was puffery or it really happened.  It was part

13   of the sexual perversion going on on the phone, or it really

14   happened.  It is not relevant conduct.

15        And simply, the prosecutor, in this case, concluded my

16   client was the bad one in this case and decided to offer him

17   a plea that required a 15-year mandatory minimum.  He has no

18   priors.

19        And I'm not trying to make light of what he did, Your

20   Honor.  As a matter of fact, he didn't like part of what I

21   put in my Sentencing Memorandum.  What he did was horrible

22   and it was deplorable.

23        And he's accepted responsibility for that and is

24   standing here ready to accept responsibility.  He's

25   subjected himself to a psychiatric report, that -- and

USA v YOUNG

1    evaluation, that said what he needed in the way of

2    treatment.  As a matter of fact, so I don't forget it, we

3    were going to ask that he be sentenced to Petersburg, FCI

4    facility in Petersburg, Virginia, because that has a sexual

5    treatment program there, and is closest to his home and

6    relatives from there.

7         But, Your Honor, it would be the essence of sentencing

8    disparity, and this Court has the discretion, as you know,

9    that sentencing guidelines are advisory in nature.  A life

10   sentence would not be fair and would be the contrary to

11   justice and would be cruel and unusual punishment for him to

12   receive a life sentence for what constitutes acts that did

13   not happen, that are identical to what his codefendant got

14   72 months on.

15        We'd ask you to take those into consideration, Your

16   Honor.  Thank you.

17            THE COURT:  Thank you.

18        Ms. Herrald.

19            MS. HERRALD:  Thank you, Your Honor.

20        The United States would rely on the Sentencing

21   Memorandum already provided to the Court.  But with regard

22   to some of the arguments just made by defense counsel.

23   There are stark and distinct differences between Mr. Young

24   and his codefendant, Ms. Baisden.  In this case, it was the

25   defendant who was sending child pornography to Ms. Baisden,

USA v YOUNG

1    not vice versa.  Ms. Baisden never requested child

2    pornography; it was sent unsolicited by the defendant.  He

3    obviously was in possession of it prior to sending it.  And

4    he is the one who was actively engaged in that.

5        He is the one who, in Ashland, Kentucky, tried to meet

6    a 15-year-old girl for sex.  That is what initiated this

7    entire matter.  He went to a meeting location in order to

8    meet with a 15-year-old girl to engage in sexual activity.

9    At that time, his cell phone was seized, and upon searching

10   it, the conversations between him and Ms. Baisden were

11   discovered.  The conversations he was having with the

12   undercover officers in Kentucky and the conversations he was

13   having with Ms. Baisden, trying to have sex with a

14   12-year-old, were happening at the same time, on the same

15   day.

16       So the defendant has shown that he had every intention

17   of following through to have sex with a child.

18       He had conversations in Ashland, Kentucky, about

19   meeting with a child.  He went to the location to meet her

20   to have sex.

21       He was having identical -- in fact, much more

22   descriptive and much more graphic conversations with Ms.

23   Baisden regarding minor Victim 1, a 12-year-old.

24       And in those conversations, toward the end, before they

25   were terminated at the time of his arrest, they were

USA v YOUNG

1    discussing trying to meet up.  They were discussing days

2    the next week that they might be available based on their

3    work schedule.  And while we may not know what was happening

4    in Ms. Baisden's head, because she has never actually shown

5    up to have sex a child; the defendant has.

6         The defendant has shown up to have sex with a child.

7    And there is no reason to believe that he wasn't equally

8    sincere in his conversations with Ms. Baisden.

9         It is sheer luck, in the opinion of the United States,

10   that the undercover was able to meet with him on that day

11   and arrest him and seize his phone and discover the plot

12   regarding Ms. Baisden.

13        The United States fears what would have happened had

14   another week gone by and he had actually made arrangements

15   to meet with Ms. Baisden.

16        And the conversation -- the entire conversation between

17   the defendant and his codefendant has been provided to the

18   Court previously as part of motions practice.  And the Court

19   has had an opportunity to review that entire conversation.

20        And when looking at the conversation as a whole, it is

21   clear that there was one individual out of those two that

22   was driving the conversation.  And that was Mr. Young.  From

23   the beginning, he would continually egg on Ms. Baisden.  If

24   she would start to become hesitant, if she would seem that

25   she was losing interest or was afraid or thought that this

1    was inappropriate, he was the one who would egg her on.  He

2    was the one who would push the conversation forward, over

3    her objections, over her hesitancies.

4         And he was the one -- she was not -- Ms. Baisden was

5    not asking for him to produce child pornography to send to

6    her, but he was asking Ms. Baisden to send him child

7    pornography of minor Victim 1.

8         So there is -- there is a slew of distinct differences

9    between this defendant and Ms. Baisden.

10        Overall, this case is one where the guidelines are

11   correct.  And it is not a common situation where a defendant

12   is eligible for a life sentence and the guidelines suggest a

13   life sentence.

14        And I can tell this Court, I do not believe I've ever

15   recommended a life sentence before in a case, but the United

16   States is recommending a life sentence in this case because

17   of the gravity of these allegations, the graphic nature of

18   the conversations.  And these were real kids.  These were

19   not undercover officers.  These were real children, a real

20   12-year-old and a real 14-year-old that we know the

21   defendants had access to.  We know because they were in

22   positions of trust over those minors.

23        They exchanged real pictures of those real children and

24   discussed exactly the graphic, deplorable sexual activities

25   they wanted to engage in with those children.  Primarily,

USA v YOUNG

1    the defendant.

2         It was the defendant who suggested trading the

3    children, so that he could have sex with a 12-year-old now

4    instead of waiting until she was older, which is what Ms.

5    Baisden would frequently request.  Ms. Baisden would

6    continually say, "Let's wait until she's 14.  Let's wait

7    until she's 15."

8         And it was the defendant who kept pushing, "No.  I want

9    to have sex with her now while she's 12."

10        The defendant also -- and, again, defense counsel is

11   correct.  We cannot prove whether this was puffery in this

12   conversation, whether he was trying to convince Ms. Baisden

13   that sexually abusing children was the norm, but he bragged

14   about his own sexual abuse of Victim 2 and when Victim 2 was

15   a very young child.

16        There is no way to corroborate that.  The age that the

17   victim apparently was, she would have no recollection of any

18   of this abuse.  So we can neither prove nor disprove that

19   conduct.  But we know that the defendant was bragging about

20   it.  And bragging about it in detail.

21        And the fact that he was then at this age willing to

22   trade Victim 2 away to another person to have sexual

23   activity with, it simply indicates that this person is

24   willing to sexually abuse children.  Whether or not he did

25   at the time, he is willing to now.  He is willing to today.

USA v YOUNG

1          And then in this case, there was this sex offender
2     evaluation done.  This evaluation done by Dr. Clayman.  The
3     United States has never before seen a report that indicated
4     that a defendant was a high risk to re-offend.  But in this
5     case, Dr. Clayman pointed out that the defendant has failed
6     to show -- to admit, to take responsibility, and to accept
7     that he had done these things, to admit to his own sexual
8     interest in children, that is so obvious, and to admit that
9     there is any potential harm done.  That, combined with other
10    factors in the report by Dr. Clayman, indicate that this
11    defendant is a high risk to re-offend.  And given the types
12    of offenses that the defendant was seeking to commit in this
13    case, the United States believes that the fact that he's a
14    high-risk to re-offend, and the fact he has demonstrated
15    that he is willing to go meet a child, and the fact that
16    he's interested in these young children in the graphic ways
17    that he described in these conversations, the children of
18    the community will not be safe unless he's incarcerated.
19         For that reason, the United States believes that the
20    guidelines are appropriate.
21         But to the extent that the Court would vary downward
22    and sentence him to a sentence below the guidelines, the
23    United States would also request that, in this case, a
24    lifetime term of supervised release would be appropriate, in
25    order to monitor the defendant and ensure that he does not

USA v YOUNG

1   return to the ways he was engaged in at the time of his

2   arrest.

3          THE COURT:  Thank you.

4       And, Mr. Lafon, in light of the government's comments,

5   anything further?

6          MR. LAFON:  Yes, Your Honor.  I mean, I think it

7   proves my point.  The United States Attorney's Office has

8   concluded that this is the bad guy, and they are going to

9   try -- I've never seen a case were there was not actual

10  physical contact where they were seeking a life sentence.

11  I've never seen one.

12      She talks about the pornography, and he sent it.  It's

13  the same crime if she received it.  And it's not the crime

14  that he pled to.

15      Two:  Ashland, Kentucky.  She wants to weave that in

16  and out.

17      This Court heard extensive evidence about this case.

18  He didn't stop in that park.  We don't know what he was

19  going to do.  They stopped him as he was going through the

20  park.

21      And he, and he -- they never stopped him -- they don't

22  know what he was going to do.  And it's not relevant

23  conduct.  It shouldn't be considered in this sentencing.

24      Saying that he was driving the conversation, that's

25  ridiculous.  His codefendant is the one that first

USA v YOUNG

1    suggested, well, if you pay me, I'll work this out for you.

2        Your Honor, we think a life sentence is totally cruel

3    and unusual, and we'd ask the Court to consider our

4    comments, please.

5            THE COURT:  Thank you.

6        And, Mr. Young, have you anything you'd wish to say in

7    your own behalf?

8            THE DEFENDANT:  Yes, Your Honor.  I would like to

9    first start out saying that I am incredibly sorry for my

10   actions and apologize to Victim 1 and Victim 2.  I just --

11   it hurts me to know that I hurt anybody else, knowing that

12   they have pain and they have hurt and they have all that

13   because of my actions.  That will haunt me for life, and I

14   know it's going to haunt them for life.

15       But I'm want to read -- I don't want to sound like I --

16   I'm babbling, so I did prepare it.  I don't really do well

17   in front of public, speaking, so, if you would allow me to

18   say these words.

19       I would like to start by saying I am so sorry for my

20   role in hurting Victim 1 and Victim 2.  The guilt and the

21   shame will be with me forever.  And my words to express how

22   truly sorry I am -- there is no words.

23       Your Honor, I can't believe how bad I messed up all the

24   lives involved in this case.  Because of my actions, I've

25   lost everything.  And I understand why I've lost everything.

USA v YOUNG

1   My actions were deplorable.

2        My family has turned their back on me.  My town has

3   shunned me.  And I understand why they've done that, because

4   of my actions.

5        I have lost all self-respect and self-worth since my

6   actions.

7        Since I have been locked up for the last 22 months, I

8   have sought help from my actions and from my conduct.  I

9   have started to restore some healthy relationships with my

10   family.

11        On June 9, 2016, my father passed away.

12        And it was my responsibility, mine -- nobody else's but

13   mine, to take care of my mother.  And I have failed my

14   father's wishes, and I failed my mother.  Because of my

15   actions on them days, them conversations, by hurting Victim

16   1 and Victim 2.  I know it was wrong.  And I do accept all

17   responsibility for that.

18        From my actions, I do suffer from some depression,

19   anxiety, and PTSD.  But no matter how hard I try to rebuild

20   my life, I know that the demons in my life can't compare to

21   the demons I have put in theirs.

22        It pains me to think that I've hurt a child.  And that

23   will be with me for life.

24        Your Honor, I humbly ask the Court just to give me a

25   chance, please, give me a chance to show that I can be

1    better than this.  Not just to this Court, but to my family,

2    to my friends, and to my community.

3        I have searched my soul for the last 22 months, and I

4    am determined to change.  I have been respectful to everyone

5    involved in this case, from corrections officers to staff,

6    to my fellow inmates, to the Court.

7        I have built a support system with my family.  And I

8    know with their help, I can return and reenter in society

9    and succeed in a positive -- positive way.

10       I accept responsibility for my actions.  And I grieve

11   over the harm I have caused Victim 1 and Victim 2.

12       And I am deeply, deeply sorry for my actions.

13       I humbly ask for leniency from the Court.

14           THE COURT:  Thank you, Mr. Young.

15           THE DEFENDANT:  Thank you, Your Honor.

16           THE COURT:  We'll be in recess for 10 minutes.

17           THE CLERK:  All rise.

18       (A recess was taken from 3:15 p.m. until 3:33 p.m.)

19           THE CLERK:  All rise.

20           THE COURT:  Thank you for returning to the bench.

21   And let me ask, Mr. Lafon, anything further?

22           MR. LAFON:  Nothing.

23           THE COURT:  Ms. Herrald, anything further?

24           MS. HERRALD:  No, Your Honor.

25           THE COURT:  And, Mr. Young, have you anything

USA v YOUNG

1    further?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  Mr. Young, the Court recognizes, as

4    all of us do, that the offense for which you're before the

5    Court for sentencing is an unusually serious one.  I

6    recognize that the contact that was sought did not come to

7    pass, but what I see is the efforts that you were making

8    that culminated in a few days in March with your contacting

9    one whom you thought to be a 14-year-old girl, whose mother

10   intercepted those contacts, and, doubtless, saved an

11   engagement that might have been not unlike the one that was

12   attempted in the offense of conviction.

13       At the same time as you were engaging in those

14   conversations with respect to the exchange of Victims 1 and

15   2, as it were, you were also seeking out another who you

16   understood to be a 15-year-old.  And your contact there was

17   ultimately aborted when you didn't see the individual you

18   were expecting to find at the park, and quickly left.

19       More to the point, all that simply surrounds the

20   exceptional conduct that took place between you and the

21   mother of Victim 1.

22       I do believe the government assesses it correctly when

23   it indicated that, were it not for you, none of it would

24   have happened with respect to Victims 1 and 2.  You were the

25   moving force.  The tone of the conversations, as such, you

USA v YOUNG

1    were the one that kept them going.  And although that other

2    individual certainly was quite at fault and has come to

3    account for it, for her involvement and prospect that her

4    daughter might be offered to you, the Court does assess it,

5    as does the government, that you are the one who was more

6    nearly the driving force in the entirety of that

7    conversation.

8         What is, of course, a relief is it didn't happen,

9    ultimately; that is, that exchange did not occur.

10        The conduct is necessarily less serious as a

11   consequence of that.  Mr. Lafon makes the point that one can

12   never be sure what would have happened.

13        And so, the Court takes that into account, as well, in

14   determining a sentence to impose.

15        I'm concerned also about one other thing that was

16   revealed during the course of that conversation that you had

17   with the mother of Victim 1 relating to your own more

18   personal conduct, and I'm not going into that on this

19   record.  We all know what the Court is speaking to.  That

20   was exceptional.  Your attorney refers to it as puffery.

21   Perhaps so.  The extent to which it was revealed and touched

22   upon in different contexts is disturbing.  And it is for

23   that reason that the Court does place some credence in the

24   validity of that which you were stating.

25        The Court couples that with the Dr. Clayman report, and

1   there the indication is that you are at risk of recidivism.

2   The indication there is that you were less than candid in

3   the course of that interview, and that is reflective in a

4   number of places in the analysis by the doctor.

5       It too concerns the Court.

6       And so I view you as one who, although not shown except

7   by your own word to have engaged in misconduct of this sort,

8   that you are at considerable risk to do so.  And at the same

9   time, I retreat to the point that your attorney has

10  emphasized, on multiple occasions, and that is, it didn't

11  come to pass.  And thank heavens for that.

12      When the Court takes those factors into account, and I

13  look at your own background, it seems as though you've

14  generally lived a life of a reasonably good citizen.  You

15  have no criminal record.  That's not unusual in these cases.

16  Indeed, the Court seldom sees any criminal record of any

17  moment with respect to those involved in matters of this

18  sort.  Unless, of course, on some prior occasion, someone

19  has been convicted of an offense of a similar nature, but

20  that is not usually the case.  Usually individuals who are

21  charged with matters of this kind involving sex offender

22  cases come to the Court without any criminal record.  And

23  you do as well.  Except perhaps for some minor traffic

24  matters.

25      The Court gives you credit for it; although, I don't

USA v YOUNG

1    find it surprising.  It is rather common that that would be

2    the case.

3        When the Court takes into account the characteristics

4    of the offense, as well as your own characteristics, and

5    recognizes the need for a sentence in the case to protect

6    the public from further criminal conduct on your part, and

7    the Court finds that to be a genuine concern, as well, of

8    course, always as one that will deter not only you but

9    others from engaging in like conduct.  I've considered as

10   well disparity.  The disparity that's been referred to here

11   has to do with the sentencing of Ms. Baisden and the

12   sentence she received, and the one of which you're facing.

13       The Court recognizes, and I think I've already made it

14   clear, that your conduct was the more serious.  And I would

15   note, as well, that in evaluating the two cases, her remorse

16   seemed plain.  I haven't fully detected that from you.  I

17   can only suspect it.

18       And so, I must say that although I might find some

19   disparity in the sentence that is six years on the one hand

20   and life on the other hand; I certainly don't find one of a

21   sentence of six years on the one hand and a mandatory

22   minimum of 15 years on the other.

23       The Court, then, in determining a sentence to impose,

24   takes into account your age.  I take into account, as well,

25   as I often do in these cases, the extent of the supervised

USA v YOUNG

1    release term that the Court will impose as well.

2         When I do that, I've concluded, after taking into

3    account all the factors under Section 3553(a), as the Court

4    must, I've concluded that a sentence that is sufficient but

5    not greater than necessary is one that varies down somewhat

6    from the 43 and I classification, to one that is 36 and I.

7    That is, the Court will vary down in this case, seven

8    levels.  That's a level that brings us to 188 months to 235

9    months.

10        Based on the age that you will be when you finish the,

11   not only the mandatory minimum, but the lower guideline

12   range of that sentence, which would be the 15 years and

13   eight months that I've indicated, coupled with a term of

14   supervised release of 25 years, the Court is satisfied that

15   that is sufficient to meet the goals of sentencing in this

16   case, and, at the same time, does not exceed that which is

17   appropriate.

18        The Court, in addition to the sentence of 188 months'

19   imprisonment, will impose in this case the term of

20   supervised release of the length I've indicated, and the

21   Court's going to make as conditions of that term of

22   supervised release those conditions that are standard by

23   standing order in this district as well as those customarily

24   employed and suggested by the Administrative Office.  And in

25   addition to that, all of the sex offender Standard and

1    Optional Conditions that the Court has earlier gone over

2    today, which is imposing all of those with the modifications

3    that the Court has earlier made today.

4        The Court recognizes that you don't have the funds with

5    which to pay a fine, and the Court is not going to impose

6    one in the case.

7        The Court recognizes, as well, that you don't have the

8    moneys with which to pay the $5,000 assessment that would

9    accompany this case otherwise, and so the Court does not

10   impose it based on your indigency.

11       The Court will impose the $100 Special Assessment, and

12   direct it be paid by you at the rate of $10 a month, with

13   the first such payment due from you by the first day of May,

14   and continuing at the rate of $10 a month until that's paid

15   in full.

16       The Court would ask the parties if you have anything

17   further?

18           MR. LAFON:  Your Honor, the only thing I would ask

19   is -- I asked about the recommendation to Petersburg, FCI,

20   or some other equivalent entity, facility that has sexual

21   treatment, which I know that one does, and that's the one

22   closest to his home.

23           THE COURT:  The government have a thought on that?

24           MS. HERRALD:  The United States has no position on

25   that other than --

USA v YOUNG

1              MR. LAFON:  Sexual offender treatment is what I
2    meant to say.
3              THE COURT:  Pardon me?
4              MR. LAFON:  Sexual offender treatment is what I
5    meant to say.
6              THE COURT:  All right.  The Court will make that
7    recommendation.
8              MR. LAFON:  Nothing further other than that.
9         Did you understand his ruling, 15 years, eight months?
10             THE DEFENDANT:  Yes, I understand.
11             MR. LAFON:  Okay.
12             THE COURT:  Ms. Herrald.
13             MS. HERRALD:  At this time, the United States
14   would move to dismiss the remaining counts as to the
15   defendant, I believe Counts Two, Five, Seven, Nine, and Ten.
16             THE COURT:  And I take it there is no objection to
17   that motion?
18             MR. LAFON:  No objection.
19             THE COURT:  Which is granted.
20        Mr. Young, the Court would inform you that you have
21   14 days from today within which to appeal your conviction
22   and sentence in this case.  And if, as the Court understands
23   you to be, you're without funds with which to prosecute that
24   appeal, and should you request, the Court would appoint
25   counsel for you at the expense of the United States, and the

USA v YOUNG

1    cost of that appeal would otherwise be at the expense of the

2    United States as well.

3         Good luck to you, sir.

4              MR. LAFON:  Thank you, Your Honor.

5              THE DEFENDANT:  Thank you, Your Honor.

6              THE CLERK:  All rise.

7         (Proceedings concluded 3:48 p.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                 CERTIFICATE OF OFFICIAL REPORTER

 2       I, Catherine Schutte-Stant, Federal Official Realtime

 3  Court Reporter, in and for the United States District Court

 4  for the Southern District of West Virginia, do hereby

 5  certify that, pursuant to Section 753, Title 28, United

 6  States Code, the foregoing is a true and correct transcript

 7  of the stenographically reported proceedings held in the

 8  above-entitled matter and that the transcript page format is

 9  in conformance with the regulations of the Judicial

10  Conference of the United States.

11             s/Catherine Schutte-Stant, RDR, CRR

12       _____  December 18, 2020

13             Catherine Schutte-Stant, RDR, CRR
              Federal Official Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25
```